**UNITED STATES of America,**
**Appellee,**

v.

**Paul WALASEK, Appellant.**

**No. 75–1436.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 30, 1975.

Decided Dec. 30, 1975.

Robert E. J. Curran, U. S. Atty., John T. Thorn, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Stanley S. Arkin, Mark S. Arisohn, New York City, for appellant.

Before VAN DUSEN, HASTIE and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

### I

Appellant Walasek was convicted on one count of violating 18 U.S.C. § 1503[1] (obstruction of justice) and one count of conspiracy (18 U.S.C. § 371) to violate 18 U.S.C. § 1503.[2] The gravamen of the charge was that Walasek, a Vice-President and Regional Manager of WUI/TAS, Inc., caused certain records of that company to be destroyed after he had been advised that a federal grand jury subpoena duces tecum had been served upon the Company's Philadelphia office on June 21, 1974.

It is not disputed that records sought by the subpoena were destroyed by two Philadelphia employees of WUI/TAS, Inc., Panaro and Fetterman,[3] who worked under the general supervision of Walasek, or that Panaro discussed the subpoena over the telephone with Walasek (who was in New York City) during the hours between the receipt of the subpoena and the destruction of the documents. Appellant does not in fact contest the sufficiency of the evidence to support the findings which the trial court held would constitute the substantive crime. While Walasek *does* challenge the adequacy of the evidence to

---

1. 18 U.S.C. § 1503. Influencing or injuring officer, juror or witness generally.

    Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. Appellant's sentence amounts to five days in custody and the remainder of a one-year sentence, plus an additional one-year period, on probation.

3. Both were named as unindicted co-conspirators, and testified for the government.

support the conspiracy count, we conclude that there was enough evidence to support a jury finding that Panaro and/or Fetterman possessed a state of mind consistent with a proscribed agreement with Walasek.[4]

Of the other points of error raised by appellant, only two related contentions going to the interpretation of the obstruction of justice statute require discussion.[5]

## II

The parties agree that a pre-requisite for a conviction for obstruction of justice under the final clause of 18 U.S.C. § 1503 is the pendency of some sort of judicial proceeding which equates to an "administration of justice." *Pettibone v. United States,* 148 U.S. 197, 207, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *United States v. Perlstein,* 126 F.2d 789 (3d Cir.), *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). Where the parties disagree is on the question of when a grand jury investigation progresses to a stage where it can be said to be "pending" so as to activate the sanctions of § 1503.

In the present case, it appears that, prior to June 21, the investigation of the business practices of WUI/TAS, Inc., had been assigned by the U.S. Attorney's office to a regularly sitting grand jury, that a witness had been called to testify before that grand jury concerning WUI/TAS, and that upon the witness' refusal to testify, a Petition for Immunity had been filed and granted.[6]

Appellant would have us adopt a rigid rule that a grand jury proceeding is not "pending" until a grand jury has actually heard testimony[7] or has in some way taken a role in the decision to issue the subpoena. He offers no authority for such a rule, and we are not inclined to adopt it. Appellant is correct in his observation that a grand jury subpoena may become an instrumentality of an investigative agency, without meaningful judicial supervision. Nevertheless, the remedy against potential abuses is not to establish a rule, easily circumvented, by which some formal act of the grand jury will be required to establish "pendency." The remedy is rather to continue to inquire, in each case, whether the subpoena is issued in furtherance of an actual grand jury investigation, i. e., to secure a presently contemplated presentation of evidence before the grand jury. *See United States v. Ryan,* 455 F.2d 728 (9th Cir. 1972).

Without attempting to articulate any necessary minimum set of circumstances, we are persuaded that the present record is sufficient to establish the "pendency" of a judicial proceeding.[8]

## III

The most difficult question raised by appellant is whether or not the type of conduct which he has been found to have engaged in is encompassed by § 1503. The argument is that even if an "administration of justice" is considered to be "pending," the conviction cannot stand because the statute covers only ef-

4. Contrary to appellant's argument, such a finding would not necessarily be inconsistent with the theory, attributed to the government, that Panaro and Fetterman acted on Walasek's instructions only to avoid being fired.

5. We find no merit in the claims that there was reversible error in the court's comments on the closing argument or in the prosecutor's statement of the facts, that the indictment failed to allege intent, or that the charge did not properly require a finding that appellant knew that documents destroyed were among those sought by the subpoena.

6. In Re Grand Jury Proceeding—James E. McGinn, Jr. Witness, Misc. No. 74–163,

E.D.Pa. The petition was filed on June 11, 1974 and the order issued the following day.

7. The trial court's statement (Appendix, p. A20) that the grand jury had heard testimony prior to the issuance of the subpoena is not supported by the record (A89).

8. In view of our holding that a judicial proceeding was pending on June 21, 1974, it is unnecessary to reach the question of whether there may be a conviction for *conspiracy* to obstruct justice where all of the overt acts are alleged to have taken place *before* a proceeding was pending. *See Perlstein, supra.*

forts "to influence, intimidate, or impede"[9] directed against participants in the judicial proceedings.

This position has support in the language, at least, of *United States v. Ryan, supra, United States v. Metcalf,* 435 F.2d 754 (9th Cir. 1970), *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969), and *Haili v. United States,* 260 F.2d 744 (9th Cir. 1958). These "narrow" interpretations of § 1503 spring from the application, in *Haili,* of the "*ejusdem generis* rule,"[10] which is said to require that the general concluding words of § 1503 be interpreted to include only actions similar to the enumerated interferences with witnesses, jurors, etc.

"The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of the word when there is uncertainty." *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975), *quoting from Gooch v. United States,* 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936). Under the circumstances here, we do not find this "instrumentality" dispositive. Notwithstanding the rule, some acts other than those specifically enumerated in the first portion of § 1503 must be included in the prohibitions of the section if the concluding general language is to be given any meaning.[11] On the other hand, other acts, although arguably interfering with some aspect of the administration of justice, may be beyond the scope of § 1503 because the nexus to the progress of a judicial proceeding is too attenuated and the statutory construction therefore too strained. Our task then is to decide whether the specific conduct alleged in this case can fairly be said to be within the reach of the statute.[12]

■ We start with the proposition, implicit from what has already been said, that the conduct charged to Walasek is within the literal meaning of the words of the statute. One who intentionally withholds or destroys tangible "evidence" which he knows to be the target of a grand jury investigation can reasonably be said to be one who "corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice . . . ."

Of the cases involving a similar factual pattern, i. e., withholding or destruction of tangible evidence, only *Ryan, su-*

---

9. We are unable to understand appellant's argument that "only acts of coercion or intimidation . . . can be prohibited. . . ." (Brief of Appellant at 30). Both the first and the last parts of § 1503 refer to whoever "corruptly, *or* by threats or force, or by any threatening letter or communication, endeavors to *influence,* intimidate, or impede . . . ." (emphasis added). Clearly a non-coercive but corrupt attempt to influence, *e. g.,* by bribery, is within the proscribed conduct. *E. g., United States v. Hoffa,* 349 F.2d 20, 40 (6th Cir. 1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), *reh. denied,* 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967).

10. "[T]he 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things in the same general kind or class as those specifically mentioned. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does

it apply when the context manifests a contrary intention." Black's Law Dictionary 608 (Rev. 4th ed. 1968) (citations omitted).

11. Appellant's argument is that the last part of § 1503 should be limited to efforts to influence, obstruct or impede the due administration of justice which are directed against individuals. Yet the earlier, specific, prohibitions of § 1503 pretty well exhaust such possibilities. Is not an endeavor to conceal, alter or destroy a document which "speaks" of the matter under investigation a thing "of the same general kind" as an endeavor to intimidate, influence or injure a witness? An affirmative answer has the virtue of supplying meaning to the concluding part of § 1503, which, under appellant's construction, would be redundant.

12. This inquiry is really just another facet of that undertaken in part II, *supra.* In both cases we are required to assess the extent of the relationship, whether in time, causation or logic, between the acts complained of and the progress of some "administration of justice." Often, as in *Metcalf* and *Ryan,* the nexus may be considered lacking in more than one regard.

*pra,* suggests that such conduct cannot fall within the scope of § 1503. Although that case adopts the *ejusdem generis* approach of *Haili, supra,* there is no discussion as to why the rule forecloses a conviction on these facts. More importantly, there were several other defects discussed in the *Ryan* case, e. g., failure to show (1) intent, (2) a pending proceeding,[13] or (3) the relevancy of the documents, any one of which would seem sufficient to support the court's result. Indeed, the ultimate holding of *Ryan* is not made clear; after discussing all of the above factors, the court concludes that "[t]he errors of the [trial] Court which we have pointed out require a reversal of the judgment [of conviction]." *Id.* at 735.

■ We do not believe that *Ryan* presents any persuasive reason to limit the scope of an important criminal statute, designed not only to protect participants in judicial proceedings but also to prevent miscarriages of justice. *Catrino v. United States,* 176 F.2d 884, 887 (9th Cir. 1949). The *Ryan* opinion intimates that the conduct in question constituted a contempt of court, properly punishable only under 18 U.S.C. § 401(3)[14] and/or Fed.R.Crim.Proc. 17(g).[15] The cases however are clear that § 1503 is also a contempt statute, derived from the same Act of Congress as § 401, the legislative scheme being to divide contempts between those occurring in court (or very near to court) (§ 401), and those taking place away from court (§ 1503). *United States v. Essex, supra.*

■ In view of the historical background set forth in *Essex,* the possibility that the conduct which Walasek was found to have engaged in might be covered by § 401 (or Rule 17(g)) does not suggest that the conduct should *not* be found to be within § 1503. Of course there are many instances in which a single course of conduct may violate more than one statute. Here, the laying of the indictment under § 1503 appears all the more appropriate because we have *more* than a "[d]isobedience or resistance to . . . lawful . . . process" (§ 401(3)) or a "[f]ailure . . . to obey a subpoena" (Rule 17(g)), we have the "affirmative conduct . . . ., such as destruction, concealment or removal of . . . documents" proscribed by § 1503, *United States v. Weiss,* 491 F.2d 460, 466 (2d Cir. 1974), and *this* contumacious conduct occurred *away* from the courtroom.

These views are in accord with a well-developed line of cases in the Second Circuit which hold that § 1503 covers not only the present factual pattern but a deliberate withholding of *testimonial* evidence. *United States v. Weiss, supra* (destruction, concealment or removal of documents); *United States v. Cohn,* 452

13. The factual background in *Ryan* with regard to the "pendency" of a grand jury proceeding is easily distinguishable from that presented here, and fully justified the *Ryan* court's concern for the misuse of the grand jury. The subpoenas were dictated over the phone to an Assistant United States Attorney's secretary by a Department of Justice attorney in Washington. Government counsel in Washington also arranged to have the records delivered to the I.R.S., which had previously been refused court enforcement of an administrative subpoena. The court noted that through this procedure, "by means of grand jury subpoenas, the I.R.S. obtained the records which it was unable to secure by an administrative subpoena." 455 F.2d at 732.

14. 18 U.S.C. § 401. Power of court

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

15. Fed.R.Crim.Proc. 17

(g) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it was issued by a United States magistrate.

F.2d 881 (2d Cir. 1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (false and evasive testimony); *United States v. Alo,* 439 F.2d 751 (2d Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971) (evasive answers under analogous § 1505); *United States v. Rosner,* 352 F.Supp. 915 (S.D.N.Y. 1972) (attempt to purchase confidential information on judicial proceedings); *United States v. Cohen,* 202 F.Supp. 587 (D.Conn.1962) (causing presentment of false documents); *United States v. Siegel,* 152 F.Supp. 370 (S.D.N.Y.1957), *aff'd,* 263 F.2d 530 (2d Cir.), *cert. denied,* 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1959) (destruction of memoranda sought by grand jury subpoena); *United States v. Solow,* 138 F.Supp. 812 (S.D.N.Y.1956) (destruction of documents).

In *Solow,* the court was faced with the argument that § 1503 did not cover a destruction of documents which the defendant reasonably believed would be ordered submitted to a grand jury. Judge Weinfeld, after listing the earlier segments of § 1503 which enumerate proscribed interferences, concluded that

> [t]hese provisions bring within their reach those who seek to obstruct the administration of justice by efforts upon witnesses, jurors or officers.

> But there is a further portion of the statute, an omnibus provision, directed towards "whoever . . . corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice . . . ." This latter provision . . . is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice.

*Id.* at 814.

■ We reach the same result, holding that whatever limits may be placed upon the scope of § 1503 by the ejusdem generis rule, other rules of statutory construction or the vagueness doctrine of constitutional law, those limits do *not* preclude a conviction, otherwise within the ordinary meaning of the statutory language, for deliberately destroying documents sought by a subpoena returnable before a sitting federal grand jury.[16]

The judgment will be affirmed.

---

16. We do not read *United States v. Scoratow,* 137 F.Supp. 620 (W.D.Pa.1956), as necessarily presaging a different result. Although that decision has been characterized as implicitly adopting the ejusdem generis rule, *United States v. Rosner, supra,* it deals only with the requirement that the conduct charged relate to a pending court proceeding. We have also considered *United States v. Campbell,* 350 F.Supp. 213 (W.D.Pa.1972), but find the holding of that case inapplicable here and the language ambiguous as to the scope of § 1503.