### UNITED STATES of America, Plaintiff-Appellee,

v.

### Herbert A. HOWARD and Elmer Gary Ritter, Defendants-Appellants.

### No. 77–5286.

United States Court of Appeals, Fifth Circuit.

March 23, 1978.

Rehearing Denied May 24, 1978.

Ralph W. Brewer, Baton Rouge, La., for Howard.

Bryan E. Bush, Jr., Baton Rouge, La., for Ritter.

Donald L. Beckner, U. S. Atty., George D. Hardy, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before INGRAHAM, GEE and TJOF-LAT, Circuit Judges.

GEE, Circuit Judge:

Herbert Howard and Gary Ritter were convicted of conspiring to obstruct the "due administration of justice" under 18 U.S.C.

§ 1503. Their specific offense was an attempt to sell transcripts of secret grand jury testimony to persons under investigation for suspected violations of federal banking laws. Aside from several minor contentions, which we will discuss later, defendants' various arguments on appeal boil down to the same complaint: that the statute under which they were charged and convicted does not cover the sale of grand jury testimony, or at least does not do so with the clarity demanded by the due process clause.

Section 1503 can be divided into two parts: its specific language, which forbids the influencing, intimidation, or impeding of any witness, juror, or court official, and its concluding omnibus clause, which punishes the influencing, obstruction, or impeding of the due administration of justice.[1] Invoking *ejusdem generis*, defendants ar-

gue that the statute's specific language limits the omnibus clause so that "obstructing the due administration of justice" means influencing witnesses, jurors, and officials in ways other than, and similar to, those expressly enumerated in the first part of the section. Only one court has so applied *ejusdem generis* to section 1503, reading the omnibus clause to prohibit acts similar in manner to those prescribed by the statute's specific language. *See United States v. Metcalf*, 435 F.2d 754, 756–57 (9th Cir. 1970).[2] We cannot agree with this reading of the statute because it renders the omnibus clause superfluous, *see United States v. Walasek*, 527 F.2d 676, 679 & n.11 (3d Cir. 1975), and because the most natural construction of the clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute.[3] Whatever can be

---

1. Section 1503 is reprinted below, with the omnibus clause italicized.

   Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, *or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. The *Metcalf* court limited § 1503 to "intimidating actions." 435 F.2d at 757. This cannot be a correct construction of the statute, for § 1503 clearly covers attempts to silence wit-

nesses through bribery as well as through coercion. *See United States v. DeAlesandro*, 361 F.2d 694, 699–700 (2d Cir.), *cert. denied*, 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966); *United States v. Medlin*, 353 F.2d 789 (6th Cir. 1965), *cert. denied*, 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683 (1966); *United States v. Hoffa*, 349 F.2d 20 (6th Cir. 1965), *aff'd*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In any event, *Metcalf's* limitation was unnecessary; the case involved an attempt to purchase a car bought with stolen loot. As the court itself admitted, 435 F.2d at 757, the defendant's actions did not relate to a pending judicial proceeding, which is a prerequisite of violating § 1503. *See United States v. Walasek*, 527 F.2d 676, 678 (3d Cir. 1975); *United States v. Ryan*, 455 F.2d 728, 733 (9th Cir. 1972). *See also Pettibone v. United States*, 148 U.S. 197, 206, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *United States v. Koehler*, 544 F.2d 1326 (5th Cir. 1977); *United States v. Baker*, 494 F.2d 1262, 1265 (6th Cir. 1974).

3. In four cases besides *Metcalf*, courts have applied *ejusdem generis* to § 1503, but none of the opinions in these cases elaborate upon the type of similarity required. For the most part, they simply state that the omnibus clause covers acts "similar" or "similar in nature" to those mentioned by the statute's specific language. *United States v. Ryan*, 455 F.2d 728, 733 (9th Cir. 1972); *United States v. Essex*, 407 F.2d 214, 218 (6th Cir. 1969); *Haili v. United States*, 260 F.2d 744, 746 (9th Cir. 1958); *United States v. Knife*, 371 F.Supp. 1345, 1347 (D.S. D.1974); *United States v. Scoratow*, 137 F.Supp. 620, 621–22 (W.D.Pa.1956). The opin-

accomplished through intimidating or influencing a witness, juror, or court official is labeled by section 1503 as an obstruction of justice, for the reason that each of these actors has certain duties imposed by law, and the interference with his performance of these duties necessarily disrupts the processes of the criminal justice system.[4] Crucial to an understanding of the instant case is the realization that this same interference can occur despite the absence of any personal contact with a juror, witness, or official. For example, persons violate section 1503 when they destroy evidence relevant to a judicial proceeding,[5] which demonstrates that the statute is concerned not only with protecting witnesses, jurors, and court officials but also with preventing "miscarriage[s] of Justice." *Samples v. United States*, 121 F.2d 263, 265 (5th Cir.), *cert. denied*, 314 U.S. 662, 62 S.Ct. 129, 86

L.Ed. 530 (1941). *See* note 3 *supra*. Using threats to prevent a grand jury witness from testifying has the result of destroying evidence; so does the burning of transcripts of that testimony, and both acts obstruct the administration of justice. The use of threats against a witness falls under the specific language of section 1503, while the destruction of documents comes under the omnibus clause.

Ample authority supports our reading of the statute. Language in *United States v. Partin*, 552 F.2d 621, 631 (5th Cir.), *cert. denied*, —— U.S. ——, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), suggests that the specific wording of section 1503 was intended to forbid certain means of obstructing justice, while the omnibus clause aims at obstruction of justice itself, regardless of the means used to reach that result.[6] *Accord*

ion in *Haili* suggests concern with results rather than manner when it notes that § 1503 " 'is designed to protect witnesses in Federal courts and also to prevent a miscarriage of Justice by corrupt methods.' " 260 F.2d at 746, *quoting Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949).

In all of the cases cited above, the courts found no violation of § 1503. *Haili, Knife* and *Scoratow* did not involve borderline facts but concerned, respectively, conduct causing a parole violation, an attempt to obtain a prisoner's release by threatening a policeman, and interference with an FBI investigation. The courts in *Essex* and *Ryan* arguably dealt with close cases: simple perjury and destruction of evidence. The *ratio decidendi* of *Essex* was that simple perjury is not a contempt offense, while § 1503 covers only contempts; and *Ryan* held merely that the prosecution had failed both to establish intent and to prove that the destroyed documents were relevant to the pending grand jury investigation. *See United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir. 1976). The question posed in *Essex*, whether simple perjury contravenes § 1503, remains open in this circuit. *See United States v. Partin*, 552 F.2d 621, 630–31 (5th Cir.), *cert. denied*, —— U.S. ——, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). As to the destruction of evidence, several courts have held it forbidden by § 1503. *See* cases cited note 5 *infra*.

In *United States v. Knife* the court stated in dictum that destruction of evidence is prohibited by the omnibus clause. 371 F.Supp. at 1346. This demonstrates that applying *ejusdem generis* does not necessarily yield the restrictive reading urged by defendants.

4. We are using the terms "administration of justice" according to the definition we approved in *United States v. Partin*, 552 F.2d 621, 641 (5th Cir.), *cert. denied*, —— U.S. ——, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), i. e., "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving truthful testimony when subpoenaed."

5. *United States v. Walasek*, 527 F.2d 676 (3d Cir. 1975); *United States v. Weiss*, 491 F.2d 460 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974); *Bosselman v. United States*, 239 F. 82 (2d Cir. 1917); *United States v. Knife*, 371 F.Supp. 1345, 1346 (D.S.D. 1974) (dictum; the court applied *ejusdem generis* to § 1503); *United States v. Siegel*, 152 F.Supp. 370 (S.D.N.Y.1957), *aff'd*, 263 F.2d 530 (2d Cir.), *cert. denied*, 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1959); *United States v. Solow*, 138 F.Supp. 812 (S.D.N.Y.1956).

6. The *Partin* court stated as follows:

[O]ne who endeavors to induce another to commit perjury . . . violate[s] the "due administration" clause. It is plain that the object of the conspiracies charged *was* to obstruct the due administration of the Houston trial and the Baton Rouge grand jury proceeding. The means allegedly chosen—inducing Baker to give false testimony—may well have violated the more specific first clause of § 1503. But we do not think that would prevent the endeavor from violating the broader "due administration" clause as well; for as we have said that clause "is broad enough to cover any act, committed

*United States v. Siegel*, 152 F.Supp. 370, 373 (S.D.N.Y.1957), *aff'd*, 263 F.2d 530 (2d Cir.), *cert. denied*, 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1959). Similarly, in *Cole v. United States*, 329 F.2d 437 (9th Cir.), *cert. denied*, 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), the court quoted with approval the following statement from the appellant's brief: " 'the limitation on the literal language of the statute [18 U.S.C. § 1503] must be that only that is proscribed which produces or which is capable of producing an effect that prevents justice from being duly administered.' " 329 F.2d at 439 (emphasis deleted). Moreover, numerous cases have interpreted section 1503 as covering all interferences with the administration of justice regardless of the means employed. *United States v. Walasek*, 527 F.2d at 681, *quoting United States v. Solow*, 138 F.Supp. 812, 814 (S.D.N.Y.1956); *United States v. Cohn*, 452 F.2d 881, 882–83 (2d Cir. 1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972); *Falk v. United States*, 370 F.2d 472, 476 (9th Cir. 1966), *cert. denied*, 387 U.S. 926, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967); *Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949); *United States v. Rosner*, 352 F.Supp. 915, 919 (S.D.N.Y.1972), *aff'd*, 485 F.2d 1213 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974) (holding attempt to obtain secret grand jury documents covered by section 1503). *Accord United States v. Carlson*, 547 F.2d 1346, 1359 n.13 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977) (stating that section 1503 proscribes "the directing of threats against witnesses or otherwise impeding the administration of justice").

Applying our interpretation of section 1503 to the instant case, we observe that the statute clearly forbids one to bribe or to coerce a judge into ordering disclosure of secret grand jury testimony.[7] To do so would constitute an interference with the performance of a duty imposed upon the judge by Rule 6(e) of the Federal Rules of Criminal Procedure, which dictates the secrecy of grand jury proceedings. The important reasons for enforcing this secrecy have been stated often:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), *quoting United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954). *Accord Posey v. United States*, 416 F.2d 545, 557 (5th Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127 (1970); 1 C. Wright, Federal Practice & Procedure: Criminal § 106, at 170 (1969). If bribing a judge to disclose secret grand jury material constitutes an obstruction of

---

corruptly, in an endeavor to impede or obstruct the due administration of justice." 552 F.2d at 631 (citation and footnote omitted; emphasis in original), *quoting Samples v. United States*, 121 F.2d 263, 266 (5th Cir.), *cert. denied*, 314 U.S. 662, 62 S.Ct. 129, 86 L.Ed. 530 (1941).

**7.** If Howard had threatened or bribed Ritter, the court reporter, into disclosing the testimony, his action would have fallen under the specific language of § 1503 because a court report-

er is an officer of the court, 82 C.J.S. *Stenographers* § 1 (1953); *see Dieu v. Norton*, 411 F.2d 761 (7th Cir. 1969); *Stewart v. Minnick*, 409 F.2d 826 (9th Cir. 1969), charged with the duty of maintaining the secrecy of grand jury proceedings, *see* Fed.R.Crim.P. 6(e). The facts of this case, however, were not developed with a view toward convicting Howard for influencing a court reporter; perhaps there was no evidence on that score, or perhaps Ritter needed no encouragement.

justice, then so does appropriation and disclosure of that material, for the result is the same, the secrecy of the proceeding is breached. The accomplishment of this result through threats or bribes falls within the specific language of section 1503, while violating the secrecy of the proceeding by selling the confidential matter comes under the omnibus clause, which proscribes any conduct that has the same effect as the specific acts enumerated in the first part of section 1503.

Our interpretation of section 1503 as applied to this case is confirmed by legislative history. Section 1503 originated as the second section of the Act of March 2, 1831, 4 Stat. 487. The first section of that Act is now 18 U.S.C. § 401. The purpose of the entire Act was to punish various conduct committed in contempt of court; present section 401 was intended to cover contempts that occurred within the court's presence, while present section 1503 was aimed at out-of-court contempts. *United States v. Harris*, 558 F.2d 366, 368 (7th Cir. 1977); *United States v. Walasek*, 527 F.2d at 680; *United States v. Essex*, 407 F.2d 214, 216–17 (6th Cir. 1969). In its current form, section 401 proscribes disobedience or resistance to a court rule, such as Rule 6(e), which requires grand jury proceedings to be

secret. Since Howard and Ritter defied Rule 6(e) by selling the transcripts, they committed a contempt as defined by section 401, *see United States v. Friedman*, 445 F.2d 1076, 1078 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (indictment and conviction under section 401 for possessing and disclosing unreleased grand jury transcripts); and since their contempt was perpetrated out of court, it falls within the prohibitions of section 1503. *See Nye v. United States*, 313 U.S. 33, 48–49, 61 S.Ct. 810, 85 L.Ed. 1172 (1941).[8]

If the key to the meaning of section 1503 were embedded in the legislative history just discussed, we would tend to agree with the defendants' claim that the statute, as applied to them, is unconstitutionally vague.[9] The legislative history, however, serves merely to confirm the natural construction of the statute, upon which we elaborated earlier. At the very least, Howard and Ritter must have known that they could not influence an official to release the transcripts and, for that reason, must have recognized that to breach the secrecy of the grand jury proceeding would constitute an obstruction of justice under section 1503. Since the omnibus clause of the statute quite clearly proclaims that all

---

**8.** Section 401 authorizes summary punishments for contempts, while § 1503 requires indictment and trial. Congress confined the former section to courtroom misconduct in order to curb judicial abuse of the contempt power. *Nye v. United States*, 313 U.S. 33, 43–48, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). Nonetheless, the two statutes often overlap. Conduct expressly covered by § 1503 may occur in view of the court, *see Pettibone v. United States*, 148 U.S. 197, 206, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *Ex parte Savin*, 131 U.S. 267, 275, 9 S.Ct. 699, 33 L.Ed. 150 (1889), and there is no reason to require summary contempt proceedings when the government wishes to proceed by indictment, *see United States v. Harris*, 558 F.2d 366, 368 (7th Cir. 1977); *United States v. Walasek*, 527 F.2d 676, 680 (3d Cir. 1975); *United States v. Friedman*, 445 F.2d 1076, 1078 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (offense under § 401 charged by indictment).

**9.** We need examine the statute's clarity only as applied to the facts of this case. Given the absence of any first amendment considerations, defendants cannot challenge § 1503 as uncon-

stitutionally vague on its face. *See United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

Nonetheless, we wish to note that our interpretation of the omnibus clause does not create a trap for the unwary. The statute covers only conduct that is related to a pending judicial proceeding, *see note 2 supra* and then only if the offending action was prompted, at least in part, by a "corrupt" motive, *see United States v. Fayer*, 523 F.2d 661, 663–64 (2d Cir. 1975). Although Howard and Ritter criticize "obstruction of justice" as a vague term, the statute actually proscribes "obstruct[ing] . . . the due administration of justice," which means interfering with the procedure of a judicial hearing or trial.

We think the statutory language is sufficiently clear and limited. If anyone unwittingly runs afoul of § 1503, it will not be on account of a misconstruction but because of an ignorance for which there is no excuse.

obstructions of justice are prohibited, we conclude that section 1503 gives "fair notice of the offending conduct" in this case, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), which is all the constitution requires, *see Rowan v. United States Post Office Department*, 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); *United States v. Harriss*, 347 U.S. 612, 617–18, 74 S.Ct. 808, 98 L.Ed. 989 (1954). *Accord Anderson v. United States*, 215 F.2d 84 (6th Cir.), *cert. denied*, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954) (upholding section 1503 against challenge for vagueness).

■ We now turn to defendants' lesser arguments, two of which overlap. First, Howard and Ritter claim that their actions did not affect the outcome of the grand jury investigation. This claim is meaningless, not only because success is irrelevant under section 1503, *see United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921); *United States v. Roe*, 529 F.2d 629, 632 (4th Cir. 1975); *United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974), but also because defendants are misreading the statute. Section 1503 does not forbid interferences with doing "justice," in the sense of "fairness" and "rightness," although undoubtedly it has an effect to do so. Instead, it forbids interferences with the "administration of justice," which means judicial procedure. *See United States v. Partin*, 552 F.2d at 641; *United States v. McLeod*, 119 F. 416, 418 (C.C.N.D. Ala.1902). Section 1503 is a contempt statute, *United States v. Walasek*, 527 F.2d at 680; *United States v. Essex*, 407 F.2d at 218, and as such is directed at disruptions of orderly procedure. Thus, it is wholly irrelevant whether defendants' actions had any ultimate effect on the outcome of the grand jury investigation: the question is whether they disturbed the procedure of the investigation.[10] Howard and Ritter next claim that their case is controlled by *Ethridge v.*

*United States*, 258 F.2d 234 (9th Cir. 1958), and *United States v. Campbell*, 350 F.Supp. 213 (W.D.Pa.1972), in both of which cases convictions under section 1503 were reversed on the ground that the defendants had merely attempted "shakedowns," that is, they had no intention of carrying out the obstruction of justice they promised to perform for pay. One can readily see the distinction between these two cases and the instant one. Howard and Ritter not only promised to deliver the transcripts, they actually carried out their promise.

■ Defendants' final contention disregards clear authority. Because section 1503 forbids interference with the "administration of justice," a prerequisite of its violation is a pending criminal proceeding. *United States v. Walasek*, 527 F.2d at 678; *United States v. Ryan*, 455 F.2d 728, 733 (9th Cir. 1972). *See Pettibone v. United States*, 148 U.S. 197, 206, 13 S.Ct. 542, 37 L.Ed.2d 419 (1893); *United States v. Koehler*, 544 F.2d 1326 (5th Cir. 1977); *United States v. Baker*, 494 F.2d 1262, 1265 (6th Cir. 1974). Defendants argue that grand jury investigation is not a requisite criminal proceeding, but the case law instructs otherwise. *See United States v. Walasek*, 527 F.2d at 678; *United States v. Campanale*, 518 F.2d 352, 366 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Marrionneaux*, 514 F.2d 1244, 1249 (5th Cir. 1975); *United States v. Knohl*, 379 F.2d 427 (2d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). These cases are clearly correct because section 1503 specifically refers to grand jurors.

AFFIRMED.

---

**10.** The statute by its terms protects witnesses, jurors, and court officials even after they have performed the duties imposed on them by law.

This clearly shows that § 1503 is concerned with more than the outcome of a judicial proceeding in a particular case.