No. 73–1727. CIOFFI *v.* UNITED STATES. C. A. 2d Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN concurs, dissenting.

Petitioner was convicted of obstruction of justice and conspiracy to obstruct justice by threatening, intimidating, or otherwise endeavoring to influence a grand jury witness. The witness, one Perry Scheer, had been a principal in a collapsed brokerage house whose activities were under investigation by the SEC and the FBI; there was strong evidence that Scheer had been involved in at least seven illegal securities transactions. Petitioner, who was allegedly in league with various persons who could have been harmed by Scheer's testimony before a grand jury investigating the affairs of the brokerage house, met with Scheer on several occasions and sought to secure Scheer's silence through veiled threats and suggestions that Scheer "take the Fifth" (or, in more contemporary parlance, "stonewall it"). Unbeknownst to petitioner, Scheer by this time was cooperating fully with federal authorities, and had been fitted out with a recording device on which he recorded several of his conversations with petitioner; these recordings were introduced at trial to corroborate and supplement Scheer's own testimony, and were played several times for the jury. I am unable to agree that the use of recordings made under

such circumstances is consistent with constitutional guarantees.

In a series of decisions beginning with *On Lee* v. *United States,* 343 U. S. 747 (1952), this Court has held that electronic interception or recording of conversations with the consent of one party does not violate Fourth Amendment standards.[1] With one notable exception, however, these decisions were handed down prior to *Katz* v. *United States,* 389 U. S. 347 (1967), in which we formally interred much of their conceptual underpinning by holding that Fourth Amendment protections rest upon reasonable expectations of privacy rather than upon common-law property principles. That exception came in *United States* v. *White,* 401 U. S. 745 (1971), where four Members of the Court held that *On Lee* remained good law after *Katz,* four others Members maintained with equal adamancy that it did not, and Mr. Justice Black (adhering to his dissent in *Katz*) found it unnecessary to reach the issue.

At a bare minimum, *Katz* must be read to require that monitoring of this sort be conducted only pursuant to a warrant: " 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' *United States* v. *Jeffers,* 342 U. S. 48, 51, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." 389 U. S., at 357 (footnotes omitted). In the absence of such judicial supervision, there is no effective safeguard against the possibility of an uncontrolled electronic police state.[2]

---

[1] See, *e. g., Lopez* v. *United States,* 373 U. S. 427 (1963); *Osborn* v. *United States,* 385 U. S. 323 (1966); *United States* v. *White,* 401 U. S. 745 (1971).

[2] See *United States* v. *White, supra,* at 760 (DOUGLAS, J., dissenting); *id.,* at 755–756 (BRENNAN, J., concurring in the result). In

In my view the Executive Branch acts unlawfully when it invades an individual's privacy through trickery or fraud. See, *e. g., Lewis* v. *United States,* 385 U. S. 206, 344–347 (1966) (DOUGLAS, J., dissenting); *Hoffa* v. *United States,* 385 U. S. 293, 347–348 (1966) (separate opinion of DOUGLAS, J.). The dangers posed by such invasions become particularly acute, however, when they are achieved through or accompanied by electronic monitoring of the sort presented here.[3]

I would grant certiorari.

---

*Osborn* v. *United States, supra,* the Court upheld the use of a recording of a face-to-face conversation where there had been prior judicial authorization for the recording. 385 U. S., at 329–330. In my dissent in *Osborn* and elsewhere, I have set forth my view that even prior judicial approval cannot validate intrusions into constitutionally protected zones of privacy for the seizure of mere evidentiary material; the need for this protection is particularly acute when the items to be seized are an individual's own words, thoughts, papers and personal effects, even if no Fifth Amendment problem is squarely presented. *Id.,* at 349–354 (DOUGLAS, J., dissenting); *Warden* v. *Hayden,* 387 U. S. 294, 319–325 (1967) (DOUGLAS, J., dissenting); *Couch* v. *United States,* 409 U. S. 322, 343 (1973) (DOUGLAS, J., dissenting). In light of the absence of any attempt to secure judicial authorization in the present case, I see no need to press that view further at this time.

[3] See, *e. g., Osborn* v. *United States, supra,* at 352–354 (DOUGLAS, J., dissenting); *United States* v. *White, supra,* at 762–765 (DOUGLAS, J., dissenting); *Lopez* v. *United States, supra,* at 463–471 (BRENNAN, J., dissenting).